Mr. Burns stands convicted of possessing a firearm in a school zone despite the fact that the jury never found him guilty of every element of that offense, and that alone renders this conviction unconstitutional. But there's more. This was a close case. Acquittals were entered on two of the three counts. The evidence of constructive possession on the third count was thin. So two counts stand acquitted. Additional jury instruction and evidence preservation error further taint that count, so the court should remand for either acquittal, dismissal, or a new trial. I'd like to start with the issue with respect to the school. Every circuit to consider the question of a school zone and whether a school meets the statutory definition has held that that is a jury determination. In this case, the court took it upon itself to make that determination, and that was unconstitutional. There's simply no further words to say. The court considered the exact situation in Medley with respect to whether or not a state court judge erred by taking a jury decision away on with respect to whether a firearm constitutes a, a flare gun constitutes a firearm. And on habeas review, this court reversed, finding that that should have been a jury determination. Here, the review is de novo, and there can be no doubt that this was significant error. What's the factual question involved in whether or not the school district, school zone, is it whether or not this particular school, Leola, fits the definition of elementary school? It's whether it provides elementary education. And that is a, that is about the characteristics of the school. That is a purely factual decision. The only case the district court cited for the proposition that it should take that decision away from the jury was Zepeda, which is a case involving the Bureau of Administration Affairs that publishes a list of judicially recognized tribes. So what, what would the jury instruction look like? What would the jury be asked to decide? Whether Leola, well, the district court found that based on the superintendent of schools, amicus brief, that a transitional kindergarten program that meets the statutory definition would be considered elementary education. So the jury instruction would be, the, the court has determined that transitional kindergarten, as statutorily defined, is elementary education. And it is for you, the jury, to decide whether or not Leola Havard provided that education. The evidence on the trial record is scant on whether or not that was the case. The government noticed a witness late, two days before trial. The witness was not qualified to testify about whether in the applicable school year, 2014 and 15, which is when the sale took place, that school provided transitional kindergarten. She wasn't in an early education role. She didn't know the age of what transitional kindergartners were. She confused whether or not teachers needed to be certificated or credentialed. On balance, on the whole, her testimony lacked credibility. So this court should remand for a new trial on that issue. So your argument is that the judge has it within his or her power to determine the definition and to say that a transitional school qualifies as an elementary school, but then the question is whether this school actually is a transitional school at the time of the event. Right. And just to be clear, it provides elementary education. So it's not even like the drug zone statute where they have to prove it's an elementary school. In fact, this school would definitively have not qualified under 860 because the definition in that statute is an elementary school. This school is not an elementary school. The principal of the school testified at trial at ER 685 that this is not an elementary school. So it's because of this weird definition provides elementary education that this is an intensely factual question. And Mr. Burns was deprived due process of law because the jury did not get to make that determination. The error was not harmless. The government bears the burden of that and it would have to show that the error was harmless beyond a reasonable doubt as to whether Leola Havard provided that education. So on that issue alone, this court should remand for a new trial. But as I've indicated, there's more. There's also significant jury instruction error with respect to the reasonable cause to believe element, which is part of the school zone count. The district court erred because it did not accurately describe the mens rea element of the charged crime to the jury in a supplemental jury instruction. The jury was clearly struggling with the definition of reasonable causes to believe. It couldn't be any clearer when the jury sends a note, please provide us with a legal definition of reasonable cause to believe. The district court only gave half of the Ninth Circuit model's instruction on the 841 aspect of reasonable cause to believe. The only place that that is defined in the model jury instructions is in the drug context with respect to 841B3, which is whether or not a chemical is being used to produce methamphetamine. The district court omitted the critical part of that instruction, which comes from Munguia. And that is that he did not, the district court did not direct the jury to evaluate Sciencer through the lens of the defendant. Munguia could not be clearer. The district court in its supplemental instruction should have written, you must consider the knowledge and sophistication of either the defendant or the person that he allegedly aided and abetted in order to find that there was reasonable cause to believe. This was a critical error because the evidence of construction possession on the part of Mr. Burns was very thin, and the district court acknowledged that repeatedly at ER 687. The district court said, if you look at the Ninth Circuit's model on possession, this evidence is thin. And the court found the aiding and abetting context much stronger. But here, the jury knew nothing about the alleged aiding and abetting beanie guy. Beanie guy, all we knew about beanie guy was that the agents had never seen him in the area before. They couldn't find him. We don't even know if he could read. We have no idea what the state of his knowledge or his level of sophistication was with respect to that familiarity in that area. The district court omitted half of the model instruction. That is error. And it's error that requires reversal unless the government can prove it was harmless beyond a reasonable doubt. In other words, this court would have to be convinced beyond a reasonable doubt that Mr. Burns would still have been convicted even if the jury did receive the full supplemental instruction. There's a further error that infected this trial, and that is respect to missing evidence. This case was about control. The district court found that Mr. Burns did not physically, there's insufficient evidence that Mr. Burns physically possessed the firearm. This all came down to construction, constructive possession and aiding and abetting. The whole case was built on the communications between Mr. Burns and the CI. Fifty-eight text messages were not preserved by the agent in this case. Only 14 were preserved. And critically, the text messages that weren't preserved, 17 of them were on the day of the transaction. The district court found this troubling, especially because the earlier calls that were preserved repeatedly showed that Mr. Burns himself did not possess any guns, that all he was was a middleman. He was trying to bring Buyer A together with Seller B. At Exhibit 3, he said, let me call and see if my brother still got it. At Exhibit 8, Mr. Burns said to the CI, his partner got rid of it yesterday. I'll try to find something else. At Exhibit 11, and this is a critical, at Exhibit 11, when the CI tells Mr. Burns he can't do the transaction that day, this is with respect to the second failed purchase, and he should hold it until Monday, Burns exasperatedly says, I'm doing this for you, brother, it ain't mine. There was no question from the evidence that was submitted that Mr. Burns himself did not have these guns. So Burns may have, a defendant in Burns' position could sort of get out from under a possessions charge by being the middleman and never actually possessing the gun. Well, there's no federal statute to convict a middleman on one sale. So the statute of conviction is possession. He would have had to possess the gun. He would have had to control the firearm. That's what's illegal. And you're saying there's no evidence that he controlled the firearm, that the evidence may or may not have been found in these texts? Correct, because there were 17 on the day of the transaction. So, for example, any text that says, my brother's running late, he's not going to bring it until X time, or my brother says it's 800, not 700, that kind of evidence would have supported a lack of construction possession theory. And because the agents didn't preserve that evidence, we don't have it. And when a case is like this, where the evidence is so thin to begin with, that's a significant error.  I understand the potential relevance of the e-mails that we don't have. I get that. But do you want an adverse inference instruction? Or dismissal based on a due process violation. And in order to get an adverse inference instruction or dismissal, do you have to find bad faith? No, you do not. And that's where the district court erred. Yeah, say more on that point then. Okay. So the district court failed to consider that the controlling authority on this point is Justice Kennedy's concurrence in Loud Hawk, which very clearly set forth that bad faith was a factor to be considered, but it was not required in that case to find that an adverse inference instruction was appropriate. There's a line of case law in this circuit, unfortunately, starting with Janel, continuing through Romo-Chavez, that ignores the controlling concurrence in Loud Hawk, that says bad faith is required for an adverse inference instruction. That line of authority is simply wrong. It's wrong. Sevilla is correct. Sevilla noted the controlling concurrence in Loud Hawk. That's the proper authority. Yeah. So I see that the district judge did not do the Loud Hawk analysis. I've got two possibilities in my head. One is that what if the district judge had done the Loud Hawk analysis and had concluded that no adverse inference instruction was appropriate? And the other one is, since he didn't do it, are we supposed to do it? Well, Your Honor, I think the appropriate remedy would be to remand for a new trial and for the district court to apply the proper legal standard. The answer to your first question is if he had applied the proper legal standard, then we would be on the second prong of abusive discretion, which would be whether his application was illogical or lacked foundation in the record. But here he didn't apply the proper legal standard, and that meets abusive discretion. And so then it just turns to the defendant to show prejudice. And certainly the defendant was prejudiced by the missing evidence and by the lack of the adverse inference instruction, given the thinness of the evidence and the fact that this was a close case. Well, we can't quite know if there's prejudice. We might suspect it, but because, I mean, this is a circular problem. We don't know for sure what the prejudice was or might have been because we don't know what the email said. Well, that's correct, and that's sort of where the district court went. But that would put defendants to an impossible standard with respect to agents not preserving text message evidence, right? And so that can't be the right result. I would like to reserve some time for rebuttal, but I don't want to cut you off. I'm still chewing on this loud hog question. What we do know is that when the purchaser shows up, the purchaser is directed to the beanie guy. Yes. Pays the money directly to the beanie guy. Yes. The beanie guy directs the purchaser to the garbage can. Yes. The purchaser then goes over and picks the white plastic bag out of the garbage can, and the gun is there. Yes. There's no evidence at all that Mr. Burns ever touched that gun. Correct, and that's what the district court found. He found that there was insufficient evidence on physical possession. Right, so it's constructive possession. Correct, and the very thinnest construction of constructive possession. Right. I get all of that. I cannot imagine that the – I'm having trouble imagining, I'll say it that way, that the missing emails would have said anything other than what we observed. That is to say that Mr. Burns never touched the gun. That Mr. Burns was the middleman. And maybe the question is, can you convict somebody for constructive possession when there's no evidence that shows that he ever touched it or that he ever had any personal control over it? It all went through the middleman. Right, and the last point is the key, personal control. The answer is no. The whole central issue was that of control, and that's what the district court said. The question in this case is, did he ever control the weapon? And he said it's not that simple because deals are susceptible to contrary interpretations, especially when one transaction fell through by virtue of the fact that the seller sold the weapon, thus suggesting no control by the defendant. The district court saw that there was very thin evidence on control. And the issue with the text messages is agent does not choose to preserve 17 text messages on the day of the transaction. And if one of those messages had said, for example, Beanie Guy going to be late. He wouldn't have referred to him as Beanie Guy, but my bro's going to be late. My bro can't get it until 10 a.m. That further distances Mr. Burns from any aspect of control. And that's why these messages were so important. And I did want to reserve time for rebuttal, and I'm sorry I'm out of time. All right. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court. Vanessa Bair-Jones, and I'm on behalf of the United States. I wanted to start by addressing the arguments that were just made about the text messages, because I wanted to point, Your Honors, specifically Judge Fletcher, to places in the record where the district court did consider the loud hawk factors and correctly applied them here. And specifically, at pages 166 to 168, the district court noted the loud hawk factors, recited the loud hawk factors, and then when the district court was making its finding that there was no bad faith here, and this is at ER 825, 824 to 825, the district court again looked at the Ninth Circuit case law and said it was inconclusive as to prejudice, that the court couldn't really draw any conclusions about prejudice, but that there was no evidence that there was any willfulness on the government's part. And again, the district court said at 825, there's no evidence that exists as to willfulness or deliberateness, and that goes directly to the factor in loud hawk, if the acts were deliberate, whether they were taken in good faith or with reasonable justification. And here, the facts show that they were taken in good faith, that there was reasonable justification, and the district court considered that in finding that there was no adverse instruction. Well, I'm not sure there was a legitimate justification. It may well be that there wasn't bad faith, but I'm not sure there's much of a justification. He said he was going to throw the phone away, and the supervisors say, fine with us. That doesn't strike me as justification. Well, Your Honor, the testimony that came in, I just, on that point, the testimony that came in was Officer Liu, one of the case agents, testified he thought that they had captured all the text messages. The testimony on the phone being thrown out came from the confidential informant, and it was a bit unclear, I would submit, because he's asked by the government attorney, did anyone from law enforcement instruct you to get rid of the phone? And Mr. Bolden says no. And then on cross-examination, he's asked. But am I wrong that he asked whether he should get rid of it? The only thing that's in the record is that the confidential informant told the ATF that the phone had died and he was going to throw it away and that there's nothing said. We don't know what that exchange is, and Officer Liu and Agent Garza, the two case agents here, had no knowledge of that exchange, at least from their testimony. So I don't believe that there's a lot of facts in this record, Your Honor, that really show that there was bad faith. Certainly— Oh, I'm not saying bad faith, but you said there was some justification, and I'm challenging whether or not there was a justification. Yes, sir. If I could go back to what the agents and the officers did here, and I think this was a mistake. Obviously, it was a mistake. But the circumstances surrounding this confidential informant having to leave San Francisco a week after the controlled buy here were extraordinary. He was robbed at gunpoint during another controlled purchase, and Agent Garza testified at that point. It immediately turned from an investigative mode to a safety mode. But Agent Garza testified repeatedly that he tried—made every effort, given the technology that he had, to preserve as many text messages as possible. He says this again and again during his testimony. He would make every effort to get as much documentation. When we met, we would try to capture as many text messages as we could, not only of Mr. Burns, but of every defendant. Could you address the jury question as to whether or not the judge was allowed to decide whether there was elementary education actually being provided, because this is a statute that doesn't say status of school. It says providing elementary education. I think you're in trouble on that one. See if you can help yourself out, because it seems to me that there is a factual dispute, and the evidence that came in was pretty sketchy. Well, Your Honor, if I could take—I'd like to start with the second point you make, which is that there's a factual dispute. There is no factual dispute here that transitional kindergarten was provided by Loyola Harvard School. And I point, Your Honor, to the record, both of the government's witness, who was cross-examined extensively by the defense counsel at trial, and the defense witness. The defense called Mr. Arauzo-Chavez, who is the current principal of Loyola Harvard but was not the principal in April of 2015 when this offense occurred. He testified that he thought the transitional kindergarten program was established that year, 2014 to 2015. That's his testimony at ER 685. That does not dispute—there's no factual dispute between that testimony and what the government's witness testified to at ER 417, that Loyola Harvard has transitional kindergarten, and at 421, that this transitional program was offered as of April 2015. And the defense has argued today that she didn't have expertise, but— And you're talking about the testimony of Kalik. You keep saying he. I think it's a she. I apologize, Your Honor. I was referencing Mr. Arauzo-Chavez, but yes, Ms. Kalik is a woman. Yeah, okay. Yes. Ms. Kalik's testimony. I apologize. Defense counsel argued today that she's simply not qualified, but she testified at trial that she had an office in the Loyola Harvard School in 2015, in April of 2015. Well, she may be qualified, but she seems to lack some knowledge. She can't identify the principal. She can't identify the lead after-school teacher, the transitional kindergarten teacher. I mean, there's some stuff she doesn't know. She certainly is cross-examined about her expertise, but, Your Honor, despite whatever things that she doesn't know about certain aspects of elementary education when she's cross-examined, there is still no dispute that Loyola Harvard offered that transitional kindergarten program in April of 2015. But she testifies that they did not have a second year. It was a standalone. It was considered elementary. Your Honor, I — It's the government's burden here, and isn't the jury supposed to be able to decide whether the government's carried this burden? Even if the testimony is uncontradicted, I think the government has to show that this carries the burden beyond a reasonable doubt. Well, Your Honor, I'd say two points here, is that the law is quite clear that a transitional kindergarten program is the first year of a two-year kindergarten program. That is a matter of law. So whether or not she testified — But is that in elementary school? Yes, Your Honor. That's elementary education. If the court looks to LaRue, which is the California Court of Appeals decision that cites a Supreme Court decision on this point, transitional kindergarten, kindergarten is elementary education. But the first year is the age at which kids are in preschool. Is that right? Your Honor, I believe that there are four-year-olds in the first year of a transitional kindergarten program. Right. And four-year-olds go to preschool. They don't go to kindergarten. Well, I don't see what relevance that has. If this is a transitional kindergarten program, Your Honor, and it is, there's no factual dispute that this is transitional kindergarten, and it's a school that provides it, and it's a San Francisco Unified Public School, and the state law defines that as kindergarten, it doesn't seem to me that there's any relevance to what age the students are, because as a matter of state law, this is kindergarten. And I'd like to turn to your other question about whether it's a question of law or a question of fact, because regardless of the harmless error analysis, which I think there's really no factual dispute that this is a TK program, as an initial matter, Congress enacted Section 922Q and chose very specific language dictating how a court could decide whether or not a school qualified. And they stated in 921, it's as determined by state law. This is a difference from what Congress did in Section 860, where it did not conclude this sort of caveat of it's as determined by state law. I would submit that that is an important distinction and that this Court's ruling in Medley is instructive on that point. You know, here's my problem with your argument. Let's assume that we've got an element of a crime that needs to be proven, and it's a factual question, and there's a lot of evidence that comes in, and the judge in his own mind in a criminal case says, you know, this is overwhelming, this has been proven, and the evidence is uncontradicted. Does that mean that the judge can take that question away from the jury? No, I think it's going to depend on what kind of question we're asking, and that's how this Court has handled it. So in Zepeda, this Court said, yes, there's always going to be some facts about whether or not an Indian tribe is on the federally recognized list or not on the list or whether it's been admitted. There's always going to be some facts around that point. Well, there's not going to be much. I mean, I wrote Zepeda, and it's either on the list or it's not. Yes, Your Honor, but this Court did say that it's a yes or no. It's a on-off switch. But this Court did provide that if there was evidence that it had been omitted from the list, the Court could take judicial notice of that or consider other evidence. My point simply is, I think any question, any question of law, has little nuggets of fact. The real question is, is this something that gets to the heart of an element of a crime such that due process? Well, it seems to me that this is an element of a crime. I mean, in order for this to be a crime, it has to be an elementary school, and a school is defined here as providing elementary education. And assuming that we've got sufficient evidence for the jury to conclude that this was an elementary education, I think the elementary education was provided. I get that. Does that mean that the judge gets to decide the question? Your Honor, I think Medley is instructive on this point. So in Medley, this Court said that when we're looking at a state law, and in that case it was the firearm enhancement, when we're looking at a state law, if there is clear precedent defining that term, defining that sort of element, if it's defined in the same relevant statute, then that can be treated as a trial judge as a matter of law. And in that case, it was the example in Runyon, a California Court of Appeals decision, where this Court of Appeals said, you know, whether a traditional pistol is a firearm is so clear that we can decide that as a matter of law. And this Court favorably cited that case in making the point that there's going to be times where it's very clearly defined, and it's defined in the code, it's defined by state precedent, and in those situations, it's not an error for the trial court to say, this is a matter of law. That's exactly what we have here. Transitionable kindergarten is clearly defined in precedent, it's clearly defined in the code, it's a matter of law under California law, and I'd submit that there's an element of sort of fundamental fairness to that, that it should be consistent. No, I get that the question isn't defined. The question is whether or not it was actually being provided at that place. And we get some testimony from Ms. Kalik that it was, and I think it's the jury to decide whether or not that's sufficient that it's being provided beyond a reasonable doubt. Even if the evidence is uncontradicted, she's a little vague. Well, Your Honor, even if we're going to get to the harmless error analysis here, and Judge Wardlaw, you asked what jury instruction would look like, and defense counsel presented one hypothetical jury instruction, that, you know, the court has determined transitional kindergarten as elementary education, it is for you to decide whether looking, Loyola Harvard then provides transitional kindergarten. And I think that would be a fine jury instruction here. But the problem for defense on this appeal is that there was no factual dispute about whether or not transitional kindergarten was provided by Loyola Harvard. They had the opportunity. They called their own witness. They cross-examined the government's witness extensively. There is simply no factual dispute in the record. If you go back and read the testimony of both of those witnesses, there's no dispute that this school provides transitional kindergarten. Isn't the point that Judge Fletcher is trying to make the fact that while there may be a clear definition of transitional kindergarten, the statute looks to whether that type of education was provided. Isn't that really the issue that the jury must address? Your Honor, I would submit that it's as the statute, the way that the statute's worded is provides elementary education as determined by state law. Yeah. Well, the state law provides a definition, and presumably that's a question of law. Correct. And the court would offer an instruction to that effect. The question remains, was that provided? That seems to me quintessentially a fact question. Your Honor, if this court is to find it a fact question, even on that there was clear evidence that was undisputed. But that's my point. The judge, whenever you've got undisputed evidence that in the view of the court or maybe in the view of the Court of Appeals as well, irrefutably establishes the point. Does that mean the jury doesn't get to decide it in a criminal case? I don't think so. No, but on harmless error review, it would mean that this court shouldn't reverse and remand for an entirely new trial. Is it harmless error review when a question is taken away from the jury that should have gone to the jury, or is it structural? I mean, when an element of the crime that the government's obligated to prove beyond a reasonable doubt is not given to the jury, I believe that's not harmless. We don't review that for harmless error. Your Honor, I would submit that if this court made an error in simply not submitting whether Harvard Leola was a school, that would be reviewed for harmless error. I don't believe that defense counsel has cited precedent suggesting otherwise. I'm not aware of precedent suggesting otherwise. This is a slightly different way of framing it. I'm not asking you to concede, but if we were to say, this question should have gone to the jury but did not, is that structural error or is that harmless error review? Your Honor, that is harmless error review. And the reason for that... And your case for that? Your Honor, the government cites in its brief, and I would actually point this court to one of the best cases for us, is one of the cases defense counsel cites, which is Edmonds. And that is a case that looks at this exact issue in the school context for Section 860. And there, the court said, had the government simply put on a witness to describe what this school was, we would not be at this stage of litigation. Yes, this can be considered under harmless error review, that this is exactly why harmless error review exists, because we had a fulsome trial on this point. And there was a very extensive factual record made about what curriculum and what education Harvard-Liela provides. The problem for defense was that their witness didn't give them what they wanted, didn't say that there was no transitional kindergarten program there at the time of the offense. Their witness said that there was. So we're left with a situation where the law is clear. Under California state law, transitional kindergarten is elementary education. And the record is clear, Your Honor. This is exactly the type of matter that should be reviewed for harmless error, because it would be simply a waste of judicial resources to go back to the district court at this stage. And I'd also say, just considering the posture here, where this was an instruction that the defense counsel advocated for throughout the trial, until the government rested its case, and then changed their position on it. Now, I may be wrong, and I realize we're taking over time. I had thought that the government had originally said to the judge that this was something for the jury to decide. And then when the judge's response, he says, no, I'm going to decide that the government acquiesces. Well, the government, as a matter of trial strategy, the government, out of an abundance of caution, believed that it could go to the jury. It should go to the jury for purposes of trial. But the government always believed that the court got it right when the court said it's a matter of law to decide. And I don't believe that's an inconsistent position from what we're taking here. But back to your point, Your Honor, I don't believe that it was merely the district court sua sponte saying that this is what the court was going to do. This was what the defense counsel advocated for the court to do. And even when— Wait a minute. The defense counsel said to the judge, you get to decide whether or not the elementary education is being provided? Yes, Your Honor, throughout trial. Defense counsel said the court should decide this as a matter of law. Now, this. What do you mean by this? The court should decide whether Harvard Loyola is a school as a matter of law. Different question. The question I'm asking is whether it is designated as such a school. That's not the question I'm asking. The question is whether or not the education is actually being provided at the school. And are you saying that the defense said that should go to the judge? Yes, Your Honor. Now, you can point me to where the defense says that, but I'm rather skeptical that the defense said that. Yes, Your Honor. Let me point you to the record. Well, you're well over your time, counsel, so why don't you sit down and you can find the place in the record that defense counsel said that and write a note and give it to the deputy clerk. Okay? Thank you, Your Honor. Thank you. And I will give you two minutes. Ms. Bach. Thank you, Your Honors. The fact of whether or not Loyola Harvard provided transitional kindergarten was not uncontested. It was contested, and it was not supported by overwhelming evidence. This is not an appropriate thing to dump off on harmless error review. Our witness said he wasn't sure about whether this program was even offered at the time that this gun sale went down. Ms. Kalik said it was, and then when she was asked the foundation for her knowledge, she said, oh, it's because I was the principal and I know what the programs were then. She was never the principal of Loyola Harvard. She wasn't in that early education office in 2014, 2015. She didn't know the name of the teacher. She didn't know the age of the students. She didn't know a lot. That is not the kind of facts that this court can find that this error was harmless. It was disputed, and it was not overwhelming. And as to this harmlessness, is this structural error or harmless error? Unfortunately, under Nader v. United States, this is not a structural error. That is a materiality case, and they found that it is subject to harmless error. And what's the harmless error standard? The harmless error standard is it's the government's burden, and it must be proven beyond a reasonable doubt, and it's only when the element in question is, A, uncontested, and, B, supported by overwhelming evidence. The definition of transitional kindergarten is it meets the statutory definition if it's the first year of a two-year program that uses a modified kindergarten curriculum. There was no testimony about the curriculum at all. There was no testimony about there being a second year. This is not the kind of fact that a harmless error review applies on. Wait a minute, I thought you said harmless error does apply, but it doesn't satisfy harmless error. It doesn't satisfy, that's what I mean. This record is not one that harmless error can save the government, is what I'm trying to say. And with respect to this invited error, I don't know if the court's giving that any credence at all. We repeatedly told the district court that the court should define the legal term, but the question of whether the school provided the education should go to the jury. There was absolutely no waiver. Or invited error is what she's saying. Correct. And the one comment that she is referring to is when it was clear the judge was going to do this, it was clear he was going to take it away from the school, I'm doing this, that's the end of the story, I'm going to tell them it's a school. The only reason that trial counsel asked for a reconstruction of that was because it was the lesser of two evils. She asked, well, could you just tell them you're going to defer the decision? Because at least then it doesn't look like you're directing them to find that this is a school zone and that the government's met its burden. And the court said, okay, that's fair, I can redo it in that manner. But that was after days and filings where we had objected to the district court's procedure. That's actually a complete misrepresentation of the record, their waiver argument. And I will submit on that issue. And the only other point that I wanted to make on rebuttal, Your Honors, is that the district court with respect to the text messages did make factual findings that this was a deliberate act of the agents. At ER 735, this is a deliberate act of the agent to not copy them. At ER 100, the agent freely admits that if the texts were incriminatory, he would have kept them. So the district court did find an element of willfulness and deliberateness in the actions of the agents not to preserve the text messages, and at minimum it merited an adverse inference instruction.  Thank you, counsel. Ms. Baird-Jones, have you found a ER? Would you just give us the ER site or give it to the deputy clerk? Thank you very much. Okay. United States v. Burns will be submitted, and we will take up United States v. Davis.
judges: Wardlaw, W. Fletcher, Linn